THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **BIG LOTS STORES, INC.** : | |
| : | |
| Plaintiff, : | |
| : | Civil Action |
| v. : | No. 5:05-cv-147 (CAR) |
| : | |
| **GRAY HIGHWAY PARTNERS, LLC,** : | |
| : | |
| Defendant. : | |
| _____ : | |

**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Gray Highway Partners, LLC ("Gray Partners") contends in its Motion for Partial Summary Judgment (Doc. 22) that a liquidated damages clause in its lease to Plaintiff Big Lots Stores, Inc. ("Big Lots") is a penalty provision and cannot be enforced. The current motion does not address the primary issue in the case – that is, whether Gray Partners breached the lease agreement by leasing space in the same shopping center to a "Competing Business." Upon review of the arguments of counsel, the evidence in the record, and the relevant legal authorities, the Court finds that the damages provision in the lease is an unenforceable penalty. Accordingly, the Motion for Partial Summary Judgment is **GRANTED**.

This case concerns a Lease between Gray Partners, as lessor, and Big Lots, as Lessee ("the Lease"). Gray Partners owns a commercial development on Gray Highway in Macon, Georgia, known as "Market Square Shopping Center." In the Fall of 2003, Gray Partners negotiated with Big Lots to lease a 36,000 square foot parcel of the shopping center to Big Lots, "for the purposes of the sale of general merchandise, furniture, furniture accessories, appliances, toys, seasonal merchandise, furnishings, food (including frozen food), and or any other lawful purpose." At the time Big Lots

1

entered into the Lease, the shopping center was predominantly empty. The Lease included a restrictive clause prohibiting the leasing of other space in the shopping center to a "Competing Business," defined as a "liquidator, closeout store, discount furniture, or dollar store operation." Big Lots was required to pay a "Fixed Minimum Rent," a common area maintenance charge, and a "Percentage Rent" defined as 2.5% of gross sales above a specified volume.

In October 2004, Gray Partners entered into a lease with Dolgencorp, Inc. Dolgencorp leased approximately 30,000 square feet of space in the shopping center to operate a "Dollar General Marketplace" store. Big Lots notified Gray Partners that it considered the Dollar General store to be a Competing Business in breach of the Lease, and ultimately initiated the current lawsuit. The primary purpose of the trial of this case will be to determine whether the Dollar General store is a "dollar store" prohibited under the terms of the Lease.

The current motion addresses only the measure of damages to be applied. The Lease provides:

> In the event a Competing Business, as defined herein, is operated in the Shopping Center, Tenant shall pay in lieu of Fixed Minimum Rent, Percentage Rent and other charges payable hereunder including Additional Rent (all of which shall abate during the period that any such Competing Business is operated in the Shopping Center), monthly Rent equal to the lesser of two and one-half percent (2.5%) of Gross Sales for such month or one-twelfth (1/12th) of the annual Fixed Minimum Rent, such amount to be payable within thirty (30) days after the month for which it is due."

Gray Partners contends that this provision is an unenforceable penalty, and that Big Lots is entitled only to actual damages.

Under Georgia law, a liquidated damages provision in a contract will not be enforced if it constitutes a penalty whose purpose is to deter breach of the contract. "The enforceability of a liquidated damages provision in a contract is a question of law for the court which necessarily

2

requires the resolution of questions of fact." Gaincare, Inc. v. Ellison, 612 S.E.2d 47, 50 (Ga. Ct. App. 2005).  To be enforceable, a liquidated damages provision must meet three requirements:

> First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the probable loss.

Lager's, LLC v. Palace Laundry, Inc., 543 S.E.2d 773, 777-78 (Ga. Ct. App. 2000).  Summary judgment is warranted if the contract fails to meet any one of the three.  In this case, there is no genuine issue of material fact as to the third factor.  Gray Partners has shown that there is no evidence to show that the amount stipulated in the contract is a reasonable pre-estimate of the probable loss.

As to the first two factors, Big Lots is correct to point out that any injury caused by breach of the Competing Business restriction would be difficult to estimate accurately, and the terms of the Lease indicate that the parties intended to provide for damages rather than a penalty.  In the absence of liquidated damages, the measure of damages for a breach of a promise not to rent to a competing business would be "the difference in value between the [tenant's] leasehold with the covenant against competition unbroken and the same leasehold with the covenant broken."  David Enterprises Inc. v. Kingston Atlanta Partners, 438 S.E.2d 90, 92 (Ga. Ct. App. 1993).  "The value of said leasehold is not controlled by the stipulated rental therefor, nor the profits which the tenant could have realized from the operation of his business without the adjacent competing business. However, allegations and evidence of loss of profits are material to show the damage sustained by the lessee."  Id.

The fact that the law provides a measure of damages for such a breach does not mean that the damages are not difficult or even impossible to estimate with any accuracy.  Lost profits alone are difficult to estimate accurately, because they require consideration of a counter-factual situation,

3

the contemplation of what might have been. Estimation of the value of a piece of real property requires consideration of a number of other complex factors in addition to lost profits. It is axiomatic that location is the fundamental driver of property value. The value of a location is determined by factors such as accessibility, traffic patterns, growth forecasts, aesthetic appeal, and prestige. Like parties negotiating the sale or rental of a piece of property, a jury considering the pre- and post-breach value of the Lease in this case would have to consider these factors and make reasoned projections about future circumstances. In such a situation, contracting parties are free to include provisions for liquidated damages to compensate for breach.

Although the Lease clause in question does not use the terms "liquidated damages" or "penalty," the form of the clause indicates that the parties intended the provision to provide for damages rather than a penalty. The Lease provides that, in the event of breach, the rent for the parcel will be reduced to an amount proportional to Big Lots' gross sales, but no higher than the Fixed Minimum Rent. The reference to gross sales is consistent with an attempt to address the primary loss threatened by breach, the diminishment of potential for profit caused by nearby competition. There is no language in the Lease to suggest that the purpose of this clause is to deter breach, nor is there any evidence that deterrence was discussed in the contract negotiations.

The damages provision fails, nevertheless, because there is no evidence to show that it is a reasonable pre-estimate of probable loss. In considering this third prong of the test, "the touchstone question is whether the parties employed a reasonable method under the circumstances to arrive at a sum that reasonably approximates the probable loss of the defaulting party." Gaincare, Inc. v. Ellison, 612 S.E.2d at 50. In this case, as in Gaincare, there is no evidence that "the parties took any steps to estimate the loss prior to the contract being signed." Id. at 51. The only evidence with

regard to the negotiations about the clause is the affidavit of Big Lots Vice President Tim Kolp, who testifies that the damages provision

> is a fairly standard provision utilized by Big Lots when it leases commercial space. This provision is based upon usual and customary standards in the retail shopping industry, and falls within typical parameters and guidelines recommended by the International Council of Shopping Centers. In this industry, it is fairly typical for retail leases to include such provisions providing for reduction of rent to one-half or perhaps more, with the non-breaching party often having the option of canceling the lease entirely.

Doc. 38, ¶ 4. There is no further evidence to show how the "usual and customary standards" of the retail industry were developed, or how they were relevant to the circumstances of this case. Nor is there evidence as to the nature of the "typical parameters and guidelines recommended by the International Council of Shopping Centers." Nothing in the Lease itself references the relationship of the damages provision to a reasonable pre-estimate of probable losses. Mr. Kolp's conclusory statement is insufficient to create a genuine issue of material fact.

Without such evidence, the Court cannot evaluate whether the reduced rent provided in the damages provision is reasonably related to the reduction in value of the property that might be expected in the event of breach. Gray Partners argues that the provision is quite draconian, reducing its return on the property to twenty-nine cents per square foot, far below the normal rental value of commercial property in the market. Because of option clauses in the Lease, Big Lots would be able to continue paying that lower rent for up to 24 years. Although the stringency of the remedy is not entirely relevant (the purpose of contract damages is to give the non-breaching party the benefit of his bargain, regardless of the burden it places on the breaching party) Gray Partners' argument raises doubts about the reasonableness of the damages provision in the Lease, and those doubts are not resolved by any evidence from the prior negotiations. "In cases of doubt, the courts favor the

construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damage[s] actually shown, rather than a liquidation of the damages." Gaincare, 612 S.E.2d at 52 (quoting Fortune Bridge Co. v. Dept. of Transp., 250 S.E.2d 401 (Ga. 1978)).

Because Big Lots has failed to produce sufficient evidence to show that the damages provision represents a reasonable pre-estimate of a probable loss, the Court must find as a matter of law that the provision is a penalty, and cannot be enforced. At trial, therefore, the jury will be required to determine the actual loss, if any, caused by the alleged breach. The Court recognizes that its holding in this Order may require reconsideration of the Court's October 17, 2005 Order on Motion to Deposit Funds (Doc. 43). Gray Partners may, if required, submit an appropriate motion within twenty (20) days of the date of entry of this Order. Big Lots will have fifteen (15) days from the date that motion is filed to submit a response.

**SO ORDERED**, this 15th day of March, 2006.


S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

chw